[*General Term, April,* 1872.]

BEATTIE *v.* BOYLE.

Certain personal property was seized for violation of the revenue laws of the United States, and declared forfeited to the United States. Six days after the decree of forfeiture, and before the sale of the property, the persons who owned the property at the time of the seizure executed a mortgage on the same.

*Held,* that the mortgagee took no title.

*I. J. Miller,* for plaintiff.

*Matthews, Ramsey & Matthews,* for defendant.

O'CONNOR, J. This case is reserved here for decision on the evidence.

In 1867, Henry Davidson and William Dugan, under the firm name of Davidson & Dugan, were carrying on a distillery at Higginsport, Brown county, O. Upon a charge of some violation of the revenue laws of the United States, the contents of the distillery consisting of stills, worms, tubs, engines, boilers, scales, etc., were seized by the United States marshal, and such proceedings were afterward had in the District Court of the United States as resulted in the forfeiture of these articles to the government and an order for their sale. The decree of forfeiture was entered March 6, 1868, the property then being in the possession of the marshal. The property was sold, under the order of the court, by the marshal, on April 3, 1868, and bought in by the plaintiff, John Beattie, who received a bill of sale therefor from the marshal. The purchase money was paid by Beattie, and afterward duly distributed by order of the court. Beattie received a portion of the property so purchased, consisting of grain, and sold it here in Cincinnati. The balance of the property he has not received.

On the 13th day of March, 1868, six or seven days after

the property had been declared forfeited to the United States, and while it remained in the possession of the United States marshal under the seizure, Davidson & Dugan executed a mortgage upon the mill property, and also upon the property so seized and in possession of the marshal and afterward bought by Beattie. This mortgage was afterward foreclosed, and the defendant, Boyle, became the purchaser, and now has possession of and claims to be the owner of the same.

It is evident, that after the seizure by the marshal of this property, and after it was declared forfeited to the government, and was in the possession of the marshal, it was wholly out of the power of the defendant, Boyle, or of anybody else, to exercise any lawful acts of ownership over it. Davidson & Dugan's mortgage, therefore, of this property was simply void; and, as the evidence discloses the fact that Boyle was familiar with every step taken in this whole transaction, he must be held to have known that it was void.

It is now claimed by Boyle, that a majority, or at least the most valuable part of the property seized and sold by the United States marshal, were fixtures, and therefore could not be seized or sold as personal property or chattels.

In answer to this, it is sufficient to say, in the first place, that no evidence was offered and no argument made to show that they were fixtures. They were treated by all parties as chattels, seized as chattels, forfeited as chattels, and sold as chattels, and we think the proper time to show that they were fixtures was before the decree of forfeiture and sale was entered, or before the decree of confirmation.

In the second place, it is claimed, on behalf of Boyle, that an unlawful agreement was entered into, before the sale of this property, between the plaintiff, Beattie, and certain creditors of Davidson & Dugan, who were also present at the sale, in which it was promised by Beattie that if they would not bid on the property, and thus allow him to buy it in without competition, he would pay their

Beattie v. Boyle.

claims against Davidson & Dugan; that the creditors agreed to this and abstained from bidding, and thus allowed Beattie to have the property at his own price.

Now, if this were so it would give Boyle no right in the property, even against Beattie. The decree of confirmation and distribution, it appears to us, settled this question, at least so far as Boyle was concerned. According to Boyle's theory, any person who could, after the sale, seize the property in any way, would have a better title to it than the plaintiff, Beattie. This certainly is not the law.

Again, the evidence does not satisfy us that Beattie made any such agreement. He sent his book-keeper from Cincinnati up to Higginsport to attend the sale, and if he saw any chance to make a profit to bid in the property. Some of the creditors mentioned above testified that this book-keeper made to them the proposition to pay their claims if they did not bid, which they accepted. The book-keeper testifies positively that these creditors made the proposition to him more than once, but that he told them he had no such authority; that he had been sent up there by Beattie to bid if he saw a margin, and that this was his sole authority. Beattie testifies that he himself made no such agreement with any one, and corroborates the statement of his book-keeper. So that neither on the law nor by the evidence do we see that Boyle has made any valid defense to Beattie's claim. He has converted the property to his own use, and the only question is, what was its fair value at the time of the conversion.

[After fully considering the testimony on this point, the court gave judgment for the plaintiff for $2,500 and costs.—Eds.]